UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------ X
                                     :
                                     :
ELEANOR CAPOGROSSO,                  :
                                     :        07 Civ. 2722 (BSJ)
             Plaintiff,              :
                                     :
        v.                           :        **Opinion and Order**
                                     :
                                     :
ANTHONY F. LECRICHIA                 :
                                     :
             Defendant.              :
                                     :
                                     :
------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/24/10

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

On April 4, 2007, Plaintiff Eleanor Capogrosso ("Plaintiff") filed this diversity action alleging legal malpractice claims against Defendant Anthony LeCrichia ("Defendant"). Before the Court is Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, an attorney proceeding pro se in this action, has not opposed the Motion. For the reasons set forth below, Defendant's Motion is GRANTED in its entirety.

## BACKGROUND

### I.   Facts[1]

This case arises out of Defendant's representation of Plaintiff in a dispute against her former landlord, Reade Broadway Associates ("RBA").  Plaintiff alleges that Defendant provided inadequate legal services to Plaintiff while representing her in that dispute, causing the New York City Civil Court to enter a judgment against Plaintiff in the amount of $46,358.64 in unpaid rent and $8,227.75 in attorney's fees and the New York State Supreme Court to enter a judgment against Plaintiff in the amount of $216,075.40.  (See Def.'s Rule 56.1 Stmt. ¶ 1; Compl. ¶¶ 58, 59.)  Plaintiff claims that she would have prevailed in the dispute against RBA but for Defendant's negligence.  (Compl. ¶ 60.)  Plaintiff further claims that as a result of Defendant's alleged negligence, she has incurred legal fees in the amount of $55,412.57.  (Id. ¶ 57.)

---

[1]   The facts stated here are drawn from Defendant's Local Rule 56.1 statement and from Plaintiff's Complaint.  Because Plaintiff has not disputed Defendant's statement of facts, those facts are "deemed to be admitted for purposes of the motion."  S.D.N.Y. Local Civil Rule 56.1(c); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."); Duran v. Cushman & Wakefield Inc., No. 06 Civ. 14411, 2007 WL 2667128, at *1 n.2 (S.D.N.Y. Sept. 10, 2007) (finding that pro se plaintiff's "failure to respond to or contest the facts set forth by defendant in its Rule 56.1 statement constitutes an admission of those facts").  The Court notes that Defendants' Rule 56.1 Statement appropriately cites to admissible evidence in support of all factual assertions.

Around July 2003, Plaintiff consulted with Defendant regarding a dispute with RBA. Specifically, Plaintiff told Defendant that, contrary to her lease agreement, RBA was not providing adequate heat or cleaning services to her rented office space at 305 Broadway, Suit 607, New York, New York (the "Office"). (See Def.'s Rule 56.1 Stmt. ¶ 1; Compl. ¶¶ 9, 10, 17.) According to Plaintiff, Defendant informed Plaintiff that RBA's conduct constituted a constructive eviction. (Compl. ¶ 18.) Plaintiff further states that Defendant advised Plaintiff to discontinue paying rent to RBA, but did not advise Plaintiff to vacate the Office. (Id. ¶¶ 19, 20.)

Plaintiff alleges that, based on Defendant's advice, she ceased paying rent to RBA as of July 2003. (Def.'s Rule 56.1 Stmt. ¶ 4.) On or about January 7, 2004, RBA began a summary eviction proceeding against Plaintiff in New York City Civil Court (the "Civil Court Action") based on non-payment of rent. (Id. ¶ 5.) Acting on behalf of Plaintiff, Defendant interposed counterclaims in the Civil Court Action for constructive eviction and commenced an action against RBA for breach of contract in New York State Supreme Court (the "Supreme Court Action"). (See Compl. ¶ 27; Def.'s Rule 56.1 Stmt. ¶¶ 6, 7.) In the Supreme Court Action, RBA asserted counterclaims against Plaintiff for acceleration of the remaining rent on her lease. (See Def.'s Rule 56.1 Stmt. ¶ 8.)

3

On March 2, 2004, Plaintiff's counterclaims in the Civil Court Action were dismissed.  (Compl. ¶ 31.)  The trial in the Civil Court Action was held on March 25, 2004.  (See id. ¶ 32.) Plaintiff states that Defendant advised her not to attend this trial because her counterclaims had been dismissed and her testimony would not be necessary, and that she did not attend the trial based on this counsel.  (See id. ¶¶ 33, 34.) Following trial, the New York City Civil Court entered an order evicting Plaintiff from the Office and awarded RBA monetary damages for non-payment of rent from July 1, 2003 until March 25, 2004 in the amount of $46,358.64 and attorney's fees of $8227.75.  (See id. ¶¶ 35, 36.)

Trial in the Supreme Court Action was scheduled for September 27, 2005.  (Def.'s Rule 56.1 Stmt. ¶ 9.)  Plaintiff alleges that she was not able to attend the trial on that date because of medical reasons.  (Compl. ¶ 39.)  Plaintiff states that she advised Defendant of this conflict in advance, but Defendant failed to obtain a note from Plaintiff's doctor indicating the medical necessity of her doctor's appointment. (Id. ¶ 40.)  Plaintiff further alleges that Defendant appeared in court on September 27, 2005, and incorrectly informed the Court that Plaintiff was in her office rather than at a doctor's appointment.  (Id. ¶ 43.)  Plaintiff claims that, as a result of this incorrect statement, the Court dismissed Plaintiff's

complaint in the Supreme Court Action and entered a default judgment in favor of RBA.  (Id. ¶ 44.)

Defendant then moved to be relieved as counsel in the Supreme Court Action.  (Compl. ¶ 45.)  In January 2006, Plaintiff retained new counsel, Jonathan M. Landsman, Esq. ("Landsman").  (Id. ¶ 47.)

With Landsman acting as counsel for Plaintiff, the September 27, 2005 default judgment in the Supreme Court Action was vacated.  (See Compl. ¶ 48.)  In April 2006, a bench trial was conducted in the Supreme Court Action before the Honorable Rosalyn Richter.  (Id. ¶ 49).  On December 11, 2006, Judge Richter decided the case, awarding RBA $216,075.40 for breach of lease.  (Def.'s Rule 56.1 Stmt. ¶ 11.)  Plaintiff claims that the Court found that Plaintiff established that RBA failed to supply adequate heating and cleaning services to the Office, but nonetheless held that Plaintiff's cause of action for constructive eviction based on RBA's failure to provide adequate heating and cleaning services to the Office could not be maintained because Plaintiff had not abandoned the premises and had continued to use the premises for its intended purpose until after RBA obtained a judgment awarding it possession. (Compl. ¶ 50.)

On April 4, 2007, Plaintiff filed the instant action in the United States District Court for the Southern District of New

York alleging that Defendant committed legal malpractice in
connection with his representation of her in the dispute against
RBA.  Defendant now moves for summary judgment on all claims.

## II.  Procedural History

Plaintiff filed the Complaint on April 4, 2007.  On October
12, 2007, attorney Robert Rosenblith ("Rosenblith") filed a
Notice of Appearance on behalf of Plaintiff.

On March 30, 2009, Plaintiff, acting on her own behalf,
filed a letter Motion to Consolidate the instant action with a
legal malpractice action filed in New York State court against
Landsman, the attorney who replaced Defendant in litigating the
Supreme Court Action.  (See Pl.'s Letter Mar. 30, 2009.)  On
April 2, 2009, the Court denied Plaintiff's request, stating:
"[I]f Plaintiff wishes this case to be remanded to state court,
she may file the appropriate motion to that effect with this
Court."  (See Order Apr. 2, 2009.)

On August 4, 2009, Plaintiff, again acting on her own
behalf, filed a formal motion styled as a Motion to Consolidate
the instant action with the legal malpractice action pending
against Landsman in New York State Supreme Court.  (See Pl.'s
Mot. to Consolidate.)  On August 6, 2009, Rosenblith informed
the Court that Plaintiff's Motion to Consolidate had been "taken
without - and against - [his] knowledge, advice and consent" and
stated that he could not "continue to represent a client who

6

elects to litigate her case on her own even though she has an attorney of record, and despite the express advice of her counsel." (Rosenblith Letter Aug. 6, 2009.) Based on these issues, Rosenblith requested that the Court grant him leave to withdraw as counsel to Plaintiff. (See id.)

On October 21, 2009, Magistrate Judge James C. Francis IV granted Rosenblith's request to withdraw as counsel to Plaintiff. (See Order Oct. 21, 2009.) Judge Francis further Ordered Plaintiff to appear by new counsel or advise the Court that she would represent herself by November 10, 2009. (See id.) On December 9, 2009, Plaintiff having failed to appear by new counsel, Judge Francis denied Plaintiff's August 4, 2009 Motion to Consolidate and, noting that the discovery deadline had passed, Ordered the parties to submit a joint pre-trial order by December 31, 2009, unless either party filed a dispositive motion by that date. (See Order Dec. 9, 2009.)

On December 29, 2009, Plaintiff requested an extension of the discovery deadline in the case, claiming that illness had impeded her ability to timely perform discovery. (See Pl.'s Letter Dec. 29, 2009.) Plaintiff further indicated that she wished to appeal Judge Francis's December 9, 2009 Order denying her August 4, 2009 Motion to Consolidate, alleging that Judge Francis did not provide proper reasoning for his denial of her Motion. Plaintiff further claimed that in filing her Motion to

7

Consolidate, she had followed the Court's April 2, 2009 indication that she could file a Motion to Remand. (Id., see also Order Apr. 2, 2009.) Plaintiff further requested that Rosenblith be reinstated as counsel, claiming that (1) she failed to object to his request to withdraw as counsel only because it was made by letter rather than by formal motion and (2) that Rosenblith could not object to her filing a pro se Motion to Consolidate, as he was aware of the Court's April 2, 2009 Order indicating that she could file a Motion to Remand the action to state court. (See Pl.'s Letter Dec. 29, 2009; Order Apr. 2, 2009.)

On December 31, 2009, Defendant filed the instant Motion for Summary Judgment. On January 4, 2010, Plaintiff asked the Court to defer consideration of the Motion for Summary Judgment. (See Pl.'s Letter Jan. 4, 2010.) In support of this request, Plaintiff claimed that the Motion for Summary Judgment was premature, as the Court had not yet ruled on the many issues raised in her letter of December 29, 2009. Plaintiff further noted that the Court had recently discharged Rosenblith, and claimed that she "ha[d] not even received the case files yet so as to proceed with a new attorney or on [her] own." (Id.) Plaintiff also stated that the Motion for Summary Judgment was "defective on its face," as she had not received pages 2-9. (Id.)

On January 7, 2010, Rosenblith informed the Court that (1) he wrote to Plaintiff on October 21, 2009 to inform her that the Court had granted his request to withdraw as counsel, but heard nothing from her in return; and (2) that, on January 6, 2010, he sent the entire litigation file to Plaintiff at his own expense. On January 5, 2010, Defendant sent a letter to the Court indicating that he had re-served the Motion for Summary Judgment on the Plaintiff via fax, and suggesting that the deadline for Plaintiff to respond to the Motion for Summary Judgment should be extended to January 29, 2010. The Court granted that application.

On February 2, 2010, Defendant informed the Court that the January 29, 2010 deadline for Plaintiff to respond to the Motion for Summary Judgment had passed. (See Def.'s Letter Feb. 2, 2010). Defendant then requested that the Court consider the Motion without opposition.

As of the date of this Order, Plaintiff has not filed an Opposition to the Motion for Summary Judgment, nor has she responded to Defendant's Letter of February 2, 2010. Accordingly, the Court considers this Motion unopposed.[2]

---

[2]    In her Letter of January 4, 2010, Plaintiff alleged, inter alia, that Defendant's Motion for Summary Judgment was premature and requested that the Court defer consideration of the Motion. The Court did not respond to Plaintiff's letter request.

As a general rule, courts should make "reasonable allowances" and strive "to protect pro se litigants from inadvertent forfeiture of

## LEGAL STANDARD

A court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts

---

important rights because of their lack of legal training." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). In particular, the Court recognizes that a pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. See, e.g., Irby v. New York City Transit Auth., 262 F.3d 412, 413-14 (2d Cir. 2001). However, while Plaintiff is proceeding pro se in this matter, she is also an experienced attorney licensed to practice in the State of New York and in this Court. Therefore, Plaintiff "cannot claim the special consideration which the courts customarily grant to pro se parties." Harbulak v. Suffolk County, 654 F.2d 194, 198 (2d Cir. 1981); see also In re Martin-Trigona, 763 F.2d 503, 505 (2d Cir. 1985) (noting that a law school graduate proceeding pro se "can hardly expect the special allowances this court sometimes makes for pro se litigants who forfeit legal rights by inadvertent procedural mistakes"); Flaherty v. Filardi, No. 03 Civ. 2167, 2008 WL 4200577, at *8 (S.D.N.Y. Sept. 12, 2008) (finding that a pro se plaintiff who was also "a licensed attorney, admitted to practice before the state courts of New York and admitted to practice in this court" was "not entitled to the leniency that a non-attorney pro se routinely receives").

Accordingly, Plaintiff is presumed to understand that, in the absence of a Court Order granting her request for an extension of time and/or "refus[ing]" the Motion for Summary Judgment, (see Pl.'s Letter Jan. 4, 2010,) she would be held to the January 29, 2010 deadline for an opposition brief.

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If a non-moving party fails to oppose a summary judgment motion, "summary judgment, if appropriate, shall be entered against" it.   Fed. R. Civ. P. 56(e).   The Second Circuit "has made clear, however, that where the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citation and quotations omitted).   If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then "summary judgment must be denied even if no opposing evidentiary matter is presented."   Id. at 244.

To that end, Plaintiff's failure to oppose Defendant's Motion does not in itself justify the granting of summary judgment.   Courts have, however, granted unopposed motions for summary judgment "so long as [movants] have met their threshold burden of production." Washington v. City of New York, No. 05 Civ. 8884, 2009 WL 1585947, at *16 (S.D.N.Y. June 5, 2009).

11

## DISCUSSION

Plaintiff alleges that Defendant committed legal
malpractice by, inter alia, (1) improperly advising Plaintiff
concerning the elements of constructive eviction; (2) advising
Plaintiff to withhold rent payments on the Office; (3) failing
to notify Plaintiff that she needed to vacate the Office in
order to maintain a cause of action for constructive eviction;
(4) commencing the Supreme Court Action for constructive
eviction even though Plaintiff had not vacated the Office; (5)
asserting counterclaims in the Civil Court Action; (6) allegedly
advising Plaintiff not to attend trial in the Civil Court
Action; (7) failing to ascertain Plaintiff's whereabouts when
she did not appear at trial in the Supreme Court Action on
September 27, 2005; (8) failing to obtain a note from
Plaintiff's doctor to provide to the Court on September 27,
2005; and (9) failing to request a short adjournment of trial on
September 27, 2005.  Plaintiff further alleges that Defendant
was more generally negligent, and that he (1) failed to properly
research the law as it applied to Plaintiff's situation; (2)
failed to properly advise Plaintiff; (3) failed to diligently
represent Plaintiff; (4) failed to obtain evidence to support
Plaintiff's case; and (5) failed to assert the proper
affirmative defenses in the Civil Court Action.

12

Under New York law, a plaintiff claiming legal malpractice must show: "(1) a duty, (2) a breach of the duty, and (3) proof that actual damages were proximately caused by the breach of the duty." Tinelli v. Redl, 199 F.3d 603, 606 (2d Cir. 1999) (internal quotations omitted). "For a defendant in a legal malpractice action to succeed on a motion for summary judgment, evidence must be submitted in admissible form establishing that the plaintiff is unable to prove at least one of these essential elements." Shopsin v. Siben & Siben, 702 N.Y.S.2d 610, 611 (N.Y. App. Div. 2000).

In order to show negligence in a legal malpractice case, a plaintiff must allege that the attorney's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of the profession." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (internal quotation omitted). Accordingly, "[a] complaint that essentially alleges either an error of judgment or a selection of one among several reasonable courses of action fails to state a claim for malpractice. . . . Generally, an attorney may only be held liable for ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." Id. (citing New York law).

"To establish proximate cause, the plaintiff must demonstrate that 'but for' the attorney's negligence, the

plaintiff would have prevailed in the matter in question."

Tydings v. Greenfield, Stein & Senior, LLP, 843 N.Y.S.2d 538,

540 (N.Y. App. Div. 2007). Where "the injury is the value of

the claim lost, the client must meet the 'case within a case'

requirement, demonstrating that 'but for' the attorney's conduct

the client would have prevailed in the underlying matter or

would not have sustained any ascertainable damages." Weil,

Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, 780

N.Y.S.2d 593, 596 (N.Y. App. Div. 2004). Notably, "[t]he

failure to demonstrate proximate cause mandates the dismissal of

a legal malpractice action regardless of whether the attorney

was negligent." Tydings, 842 N.Y.S.2d at 540.

In the instant case, Plaintiff alleges that Defendant was

negligent in a variety of actions and decisions. Defendant, in

response, argues that Plaintiff's "claims . . . for legal

malpractice are legally insufficient and must be dismissed as a

matter of law." (Def.'s Decl. Summ. J. ¶ 2.) The Court agrees.

I. Defendant Was Not Negligent With Respect to the

Constructive Eviction Claim

"A constructive eviction occurs when a tenant, though not

physically barred from the area in question, is unable to use

the area for the purpose intended." Dinicu v. Groff Studios

Corp., 690 N.Y.S.2d 220, 224 (N.Y. App. Div. 1999). Said

otherwise, "[a] constructive eviction exists when the landlord's

14

wrongful acts substantially and materially deprive the tenant of beneficial use and enjoyment of the leased premises." Silver v. Moe's Pizza, Inc., 503 N.Y.S.2d 86, 88 (N.Y. App. Div. 1986).

In the instant case, Plaintiff alleges that Defendant improperly advised her concerning the elements of constructive eviction. Specifically, Plaintiff claims that Defendant was negligent in (1) advising her to withhold rent and (2) failing to advise her that, in order to maintain a cause of action for constructive eviction, she needed to vacate the Office. Plaintiff further alleges that Defendant was negligent in commencing the Supreme Court Action for constructive eviction even though Plaintiff had not vacated the Office.

Defendant, in response, has declared under oath that he "fully discussed all issues with [Plaintiff]." (Def.'s Decl. Summ. J. ¶ 20 n.d.) Defendant states that the idea "that it was malpractice not to warn [Plaintiff] that she needed to move out of her office to claim constructive eviction should be firmly rejected, since constructive eviction exists when conditions make it impossible to remain in possession of a premises and not when a tenant wants to justify not paying rent when she otherwise can remain in possession." (Id. ¶ 3.) Defendant further states that "even if [Plaintiff] was able to . . . establish that there was some lack of heat or cleaning, it would not necessarily have followed that she could have prevailed in

15

proving constructive eviction in the first place."  (Id. ¶ 21.)
The Court agrees on all counts.

First, the Court finds that, even assuming that Defendant
(1) advised Plaintiff to withhold rent and (2) commenced the
Supreme Court Action although Plaintiff had not vacated the
Office, either course of conduct would be reasonable as a matter
of law and thus cannot constitute malpractice.  See, e.g.,
Diamond v. Sokol, 468 F. Supp. 2d 626, 633 (S.D.N.Y. 2006)
("Reasonableness of a defendant attorney's conduct may be
determined as a matter of law.  In other words, defendant is
entitled to summary judgment dismissing the case, where the
record reveals no way a reasonable factfinder could find
defendant to have been negligent."); Hatfield v. Herz, 109 F.
Supp. 2d 174, 180 (S.D.N.Y. 2000) ("Where it is clear that the
attorney exercised his or judgment reasonably as to how to
proceed, summary judgment should be granted dismissing the
action.  Findings of fact are unnecessary where a court
concludes that an attorney's conduct was reasonable as a matter
of law."  (internal quotation omitted)).

As the Appellate Division noted in Johnson v. Cabrera,
"[i]t is well settled that a commercial tenant may be relieved
of its obligation to pay the full amount of rent due where it
has been actually or constructively evicted from either the
whole or a part of the leasehold."  668 N.Y.S.2d 45, 46 (N.Y.

16

App. Div. 1998); see also New York City Econ. Dev. Corp. v. Harborside Mini Storage, Inc., 819 N.Y.S.2d 211, at *4 (N.Y. Civ. Ct. May 24, 2006) ("Where . . . there has been an actual or constructive eviction from all or part of the premises, the commercial tenant may be relieved of its obligation to pay the full amount of the rent."). Because a commercial tenant in a constructive eviction case may be relieved of the obligation to pay rent, Defendant's alleged advice in this regard was reasonable as a matter of law and Plaintiff cannot prove negligence on this basis.

Likewise, Defendant's decision to commence trial on a constructive eviction claim though Plaintiff had not vacated the Office does not, as a matter of law, constitute negligence. In fact, several New York courts have found constructive eviction despite non-vacatur of the premises if a tenant is unable to use the entire rented space at all times for its intended purpose. See, e.g., Johnson, 668 N.Y.S.2d at 46 (finding that a constructive eviction arose when "the loss of heat and water substantially and materially deprived the tenant of the beneficial use and enjoyment of the premises"); Arbern Realty Co. v. Clay Craft Planters Co., Inc., 727 N.Y.S.2d 236, 237 (N.Y. Sup. Ct. 2001) (finding constructive eviction even though "the tenant was not physically barred from using the area in question," when "its access to its loading dock and the

17

availability of more than one-half of its parking spaces was severely restricted by the other tenant's loading dock and truck deliveries"); Ludlow Props., LLC v. Young, 780 N.Y.S.2d 853, 856-57 (N.Y. Civ. Ct. 2004) (finding constructive eviction warranting rent abatement when tenant did not vacate the apartment, but his full use and enjoyment of the premises was disturbed by bedbugs); Manhattan Mansions v. Moe's Pizza, 561 N.Y.S.2d 331, 334 (N.Y. Civ. Ct. 1990) (finding constructive eviction when tenant "was deprived of the beneficial use of the tenancy by a water leak, when "the leak was primarily around the grill area, preventing [tenant] from being able to prepare or serve food, and thus was prevented from operating as a restaurant"). Accordingly, Plaintiff cannot prove that Defendant was negligent by simply commencing the Supreme Court Action before she vacated the Office, and her claim for legal malpractice on this basis is meritless.

Plaintiff's allegation that Defendant was negligent in failing to advise her to vacate the Office is even more frivolous. In the instant case, Plaintiff is not claiming that Defendant failed to advise her that, because she had not yet vacated the Office, she could not state a claim for constructive eviction.[3] Rather, Plaintiff alleges that Defendant was

---

[3] As stated above, such advice would actually be incorrect under New York law.

18

negligent because he failed "to advise Plaintiff that she needed to vacate the [Office] to maintain a defense and/or cause of action for constructive eviction." (See Compl. ¶ 56.)

However, contrary to Plaintiff's understanding, a lawyer is not obligated to advise his client on how to manufacture a claim. As Defendant observes, "[s]ince [P]laintiff chose to remain in possession, while arguing that she had insufficient heat, it is not an attorney's job to tell her to move out to strengthen her case." (Def.'s Decl. Summ. J. ¶ 3.) Ultimately, it is not the role of counsel to instruct clients on how to behave in order to properly position themselves as victims of a tort.[4]

Finally, and perhaps most importantly, Plaintiff cannot establish that, but for Defendant's alleged negligence in advising her to discontinue paying rent, failing to advise her to vacate the Office, and commencing the action despite her failure to vacate the Office, she would have prevailed in her underlying claim for constructive eviction. See AmBase Corp. v. Davis Polk & Wardwell, 866 N.E.2d 1033, 1036 (N.Y. 2007) ("In order to sustain a claim for legal malpractice, a plaintiff must establish . . . the plaintiff would have succeeded on the merits of the underlying action 'but for' the attorney's negligence.").

_____

[4]    As Defendant observes, "[e]ssentially, [P]laintiff is saying that a lawyer should help her manufacture damages and claims where claims do not exist in the first place." (Def.'s Decl. Summ. J. ¶ 22.)

19

On the contrary, Justice Richter held that, leaving aside any
issues regarding the withholding of rent and her apparent
continued use of the Office for its intended purpose, Plaintiff
entirely failed to prove any damages from the alleged
constructive eviction. See, e.g., Capogrosso v. Reade Broadway
Assocs., Index No. 100333/04 (N.Y. Sup. Ct. Dec. 11, 2006)
("Even if this Court were to accept plaintiff's argument that
notwithstanding her withholding of rent there was no election of
remedies, she did not prove her claims for money damages at this
trial."). Among other things, Justice Richter observed that
"Plaintiff did not provide any proof that a single client
refused to come to her firm, or failed to return because of the
conditions in her office" and she "offered no proof of any lost
profits." Id. In fact, as Justice Richter stated, "most of
[Plaintiff's] . . . testimony about the damages . . . seemed
like pure guesswork." Id.

Because Plaintiff has not demonstrated either (1) that
Defendant was negligent in any respect with respect to his
representation of her on the constructive eviction claim or (2)
that but for Defendant's alleged negligence, she would have
prevailed on the underlying claim of constructive eviction, her
claim for legal malpractice on this basis must be DISMISSED.

II. Defendant Was Not Negligent In His Conduct of the Civil

Court Action

20

Plaintiff alleges that Defendant was negligent in asserting counterclaims in the Civil Court Action and in allegedly advising Plaintiff not to attend trial in the Civil Court Action.  Like Defendant's alleged advice to cease rent payments and his decision to commence trial while Plaintiff was still occupying the office, these arguments fail as a matter of law.

Accepting that Defendant advised Plaintiff not to attend trial in the Civil Court action, such advice would reflect a strategic judgment that, as a matter of law, does not amount to malpractice.  Rather, it constitutes a reasonable decision about trial strategy or, at worst, a "[m]ere error in judgment." Diamond v. Sokol, 468 F. Supp. 2d 626, 633 (S.D.N.Y. 2006); see Bernstein v. Oppenheim & Co., P.C., 554 N.Y.S.2d 487, 490 (N.Y. App. Div. 1990) ("[S]ome of plaintiff's allegations concerning defendant's conduct of the litigation itself are simply dissatisfaction with strategic choices, and thus . . . do not support a malpractice claim as a matter of law."); King v. Fox, No. 97 Civ. 4134, 2005 WL 3098933, at *5 (S.D.N.Y. Nov. 18, 2005) ("While counsel may have made what appears with hindsight to have been the wrong strategic choice, such choices rarely constitute malpractice.").  The Court can readily imagine many reasons why Defendant might have advised Plaintiff not to attend trial in the Civil Court Action, including the logical concern that her extensive litigation history in that court could invite

21

skepticism as to her claims[5] and, more simply, the fact that she was not obliged to testify or otherwise appear at the proceeding and thus did not need to be present. (See Compl. ¶ 33 ("Defendant advised Plaintiff not to attend the trial . . . because her counterclaims had been dismissed and her testimony would be irrelevant.").) Ultimately, "this difference of opinion as to optimal trial strategy does not raise a genuine issue of material fact." Iannazzo v. Day Pitney LLP, No. 04 Civ. 7413, 2007 WL 2020052, at *9 (S.D.N.Y. July 10, 2007).

Defendant's decision to interpose counterclaims in the Civil Court Action notwithstanding the fact that such counterclaims were prohibited by Plaintiff's lease was also reasonable as a matter of law. As courts in this state have repeatedly held, "no counterclaim" provisions contained in a commercial lease are generally enforceable, unless the counterclaim is so "inextricably intertwined" with a landlord's claim for nonpayment that "joint resolution of the claims will expedite disposition of the entire controversy." Ring v. Arts Int'l, Inc., 792 N.Y.S.2d 296, 305 (N.Y. Civ. Ct. 2004). "The principal example of a counterclaim within this exception in a commercial nonpayment proceeding is . . . . [a] counterclaim of

---

5    (See Def.'s Decl. Summ. J. ¶¶ 23-29 (outlining Plaintiff's extensive litigation history in New York State court, including the New York City Civil Court); see also id. Ex. E. (Capogrosso v. Calabro & Calabro & Ehrlich, P.C., Decision and Order, Index No. 32754/01 (N.Y. Civ. Ct. Mar. 25, 2002) (indicating that Plaintiff brought 35 lawsuits in New York City Civil Court between 1998 and 2002).)

actual or constructive eviction, to offset the obligation to pay rent, because the claim is inextricably entwined with the nonpayment of rent." Id.; see generally Sutton Fifty-Six Co. v. Fridecky, 461 N.Y.S.2d 14, 16 (N.Y. App. Div. 1983). Because Defendant could easily have argued that Plaintiff's claims of constructive eviction were "inextricably intertwined" with the Civil Court Action, he was not negligent in interposing claims on this basis.

Finally, no reasonable jury could conclude that either Plaintiff's absence from trial in the Civil Court Action or Defendant's decision to interpose counterclaims had any impact whatsoever on the outcome of the trial. In fact, Plaintiff does not even allege that she suffered any damages from Defendant's alleged decisions in this regard. Therefore, even if Defendant had been negligent, Plaintiff could not show that his negligence proximately caused her any damages.

Accordingly, there was no legal malpractice on these alleged errors, and Plaintiff's claims on these bases must be DISMISSED.

## III. Defendant's Conduct At Trial on September 27, 2005 Was Not Negligent

Plaintiff alleges that she was unable to attend the trial in the Supreme Court Action on September 27, 2005 due to medical reasons, and that Defendant was negligent in (1) failing to

23

obtain a note from Plaintiff's doctor indicating the necessity

of her medical appointment; (2) incorrectly informing the Court

that Plaintiff was not present at trial due to a work commitment

rather than a medical appointment; and (3) failing to request a

short adjournment of trial.

Defendant, in turn, states under oath that "Plaintiff

advised [him] the night before [the September 27, 2005 trial]

that she had a doctor's appointment." (Def.'s Decl. Summ. J. ¶

17.)  Defendant further states that "[t]he trial judge rejected

[his] representation that plaintiff had a doctor's appointment

and entered a default.  It turned out that plaintiff was in her

office."  (Id.)[6]

The Court credits Defendant's uncontradicted statement.

Plaintiff has offered no evidence disproving Defendant's

explanation that he told the trial judge that Plaintiff was at a

doctor's appointment, but that the trial judge did not believe

him.  Plaintiff has failed to rebut Defendant's statement that

Plaintiff failed to inform Defendant of the alleged medical

appointment until the night prior to trial.  Moreover, Plaintiff

---

[6]     Defendant further states that, at a trial of this action, he would
testify that "when [he] advised the presiding Judge that [Plaintiff]
was not available and had a doctor's appointment, the Judge directed
[him] to call [Plaintiff's] office and confirm that she was not
available.  [Defendant] followed the Judge's instructions and called
[Plaintiff's] office.  A secretary who answered the phone advised
[Defendant] that [Plaintiff] was in a meeting and could not take [his]
phone call.  When [Defendant] advised the Court what [he] was told, the
Judge made a decision to enter a default."  (Def.'s Decl. Summ. J. ¶ 17
n.c.)

24

has failed to offer any evidence that Defendant's allegedly negligent failure to request an adjournment of trial caused her any damages whatsoever, given that the default judgment entered on September 27, 2005 was subsequently vacated.  (See Compl. ¶ 48.)

Accordingly, the Court finds that Defendant was not negligent in his conduct relating to the trial scheduled in the Supreme Court Action for September 27, 2005, and DISMISSES Plaintiff's legal malpractice claim on this basis.

## IV.   Plaintiff's Final Claims Amount to Legal Conclusions Rather than Factual Allegations

Plaintiff alleges that Defendant committed legal malpractice insofar as he (1) failed to properly research the law as it applied to Plaintiff's situation; (2) failed to properly advise Plaintiff; (3) failed to diligently represent Plaintiff; (4) failed to obtain evidence to support Plaintiff's case; and (5) failed to assert the proper affirmative defenses in the Civil Court Action.  (See Compl. ¶ 56.)  Defendant, in turn, has stated that he "fully discussed all issues with [Plaintiff]."  (Def.'s Decl. Summ. J. ¶ 20 n.d.)  The Court credits Defendant's uncontradicted statement, and finds that no reasonable jury could not find for Plaintiff on any of these claims.

In ruling on a motion for summary judgment, the Court draws all inferences in favor of the non-moving party.  However, the above claims in the Complaint constitute legal conclusions rather than factual allegations, and Plaintiff has stated no facts sufficient to support these conclusions.  See, e.g., In re McClelland, 418 B.R. 61, 70 n.4 ("Plaintiff's assertions in the Complaint that Defendants were grossly negligent is a legal conclusion.  It is facts that the Court must construe in favor of the Plaintiff on a motion for summary judgment.").  Ultimately, "[c]onclusory allegations[,] conjecture, and speculation . . . are insufficient to create a genuine issue of fact" required to survive summary judgment.  Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

Accordingly, no reasonable jury could find for Plaintiff on these alleged errors, and Plaintiff's malpractice claims must be DISMISSED.

## CONCLUSION

For all the foregoing reasons, the above-captioned case is DISMISSED as to all claims.  The Clerk of the Court is directed to close the case.

**SO ORDERED:**

BARBARA S. JONES
**UNITED STATES DISTRICT JUDGE**

Dated:      New York, New York
            May 22, 2010